# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

ELEVATION A. CLARK, #1159414,

        Petitioner,

v.

                                          ACTION NO.  2:17cv366

HAROLD W. CLARKE,

        Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on Elevation A. Clark's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the respondent's motion to dismiss.  This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.  For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 10, be **GRANTED**.

## I.      STATEMENT OF THE CASE

Elevation A. Clark ("Clark") is an inmate currently confined at the Wallens Ridge State Prison in Big Stone Gap, Virginia, part of the Virginia Department of Corrections.  ECF No. 1 at 1; ECF No. 9.  Clark waived his right to a trial by jury, ECF No. 12-4 at 26–27, and following a bench trial, was convicted in the Circuit Court for the City of Hampton on October 10, 2012 of two counts of robbery, one count of possession of a firearm by a felon, one count of unauthorized use of a vehicle, one count of breaking and entering, and one count of grand

larceny. ECF No. 1 at 1–2; *Commonwealth v. Clarke*, No. CR12-420, 57–58[1] (Va. Cir. 2012). On December 18, 2012, the circuit court sentenced Clark to 98 years in prison with 86 years suspended. *Id.* at 1.

Clark appealed his conviction to the Court of Appeals of Virginia. ECF No. 12-1. The appellate court summarized the evidence in the case as follows:

> [T]he evidence proved that on December 4, 2011, Ciera Thomas, [Clark's] niece, noticed that her vehicle, a black Dodge Neon, was missing. She noted the car keys were missing from the table where she had left them earlier that day. She explained that [Clark], who resided at her house, was also gone. Thomas tried to contact [Clark], but was unable to reach him. She reported the car stolen the following morning.
>
> On the morning of December 5, 2011, Mary McNeil was walking when a man driving a black Dodge Neon stopped near her and asked for directions. As she was speaking to him, he exited the car, approached her, and demanded that she give him her purse. She testified the man pulled the purse from her shoulder. Although she was unable to identify her assailant from a photo spread, she positively identified [Clark] at trial as the man who stole her purse.
>
> Later that same day, Annie Starnes was in a parking lot putting bags in her car when a black car approached. She explained a man jumped from the vehicle and grabbed her purse, knocking her to the ground. The man entered the passenger side of the car and fled the scene. Starnes was unable to identify the man who took her purse.
>
> On December 7, 2011, Eric Wilson returned to his house and discovered it had been burglarized. He testified that many items of his personal property were missing from the residence, including computer equipment and credit cards.
>
> Detective John Baer investigated the crimes. He testified the security video from the parking lot revealed a black Dodge Neon circling the lot immediately before Starnes was robbed. Because the stolen Neon was linked to both robberies, the police developed [Clark] as a suspect. The police attempted to locate [Clark] by tracking his cellular telephone. . . . The police reported to that area and searched for [Clark] for several hours. Eventually, Baer saw Thomas' black Neon drive by. Baer saw [Clark] in the front passenger seat of the vehicle. Before the police initiated a stop of the vehicle, [Clark] exited the car and fled on foot.

---

[1] Page citations to CR 12-420 refer to the paper record provided to this Court by the state courts, which is numbered in the bottom right corner of each page.

After having been advised of his *Miranda* rights, [Clark] admitted having taken the car, but claimed he intended to return it. He also claimed he had lent the car to others over the course of the previous few days. He also admitted having stolen McNeil's purse. Regarding the robbery of Starnes, [Clark] stated he was high on cocaine and could not remember the incident. He told the police: "If you think I did it, then I did it."

The police had located a shotgun in the trunk of Thomas' car. In his statement, [Clark] explained another man had given it to him to sell. He admitted handling the weapon and putting it in the trunk. The police also found some of the property stolen from Wilson inside the trunk of the car.

*Id.* at 1–3.

The court of appeals denied Clark's appeal on July 24, 2013. *Id.* at 1–10. Clark filed a request for a three-judge panel, and a three-judge panel denied Clark's appeal on October 1, 2013. *Id.* at 11. Clark appealed his case to the Supreme Court of Virginia, which denied his appeal on January 21, 2014. ECF No. 1 at 2. Clark did not file for a writ of certiorari with the United States Supreme Court. *Id.* at 2.

Clark filed a petition for a writ of habeas corpus in the Circuit Court for the City of Hampton, asserting sixteen assignments of error. *Id.* at 3; *Clark v. Clarke*, No. CL15-1364, at 7–41[2] (Va. Cir. Ct. 2015). There is some uncertainty as to when Clark filed his petition, with respondent asserting that he filed it on June 25, 2015, ECF No. 12 at 2, and Clark asserting that he filed it on January 21, 2015, ECF No. 1 at 3. In either case, the circuit court dismissed Clark's petition on January 12, 2016. ECF No. 12-2. Clark appealed to the Supreme Court of Virginia, but only appealed as to three assignments of error: (1) that trial counsel was ineffective for failing to communicate with Clark; (2) that Clark was not provided formal notice of several indictments prior to the day of trial, and trial counsel was ineffective for not objecting to the same; and (3) that appellate counsel was ineffective for providing incorrect legal advice. ECF

---

[2] The cited page numbers for CL 15-1364 refer to the paper record provided to this Court by the state courts, which is numbered in the bottom right corner of each page.

No. 12-3 at 10. Clark later submitted a supplemental assignment of error, not a part of the original petition and not considered by the circuit court, that trial counsel was ineffective for allowing Clark to be tried simultaneously on unrelated offenses. *Id.* at 26. On March 31, 2017, the Supreme Court of Virginia dismissed Clark's fourth assignment of error as insufficient pursuant to Rule 5:17(c)(1)(iii),[3] and refused the remaining three assignments of error. ECF No. 17 at 15.

Clark certified that, on June 26, 2017, he placed his federal habeas petition in the prison mailing system. ECF No. 1 at 14. That petition was filed with this Court on July 11, 2017. ECF No. 1. Clark presents four grounds for relief: (1) that the evidence presented at trial was insufficient to support his convictions; (2) that trial counsel was ineffective for neglecting to conduct an adequate investigation, communicate with Clark, or file motions seeking separate trials; (3) that trial counsel was ineffective for failing to notify Clark that he would be tried for additional offenses and for failing to object to the same; and (4) that appellate counsel was ineffective for providing inaccurate legal advice and for failing to perfect Clark's appeal. ECF No. 1 at 21.

On October 18, 2017, respondent filed an answer to the petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and a motion to dismiss the petition, along with a supporting memorandum.[4] ECF Nos. 10–12. On November 21, 2017, Clark filed a response in opposition to the motion to dismiss. ECF No. 17.

---

[3] Rule 5:17(c)(1)(iii) provides that "[a]n assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken . . . is not sufficient. . . . If the assignments of error are insufficient, the petition for appeal shall be dismissed."

[4] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Clark with notice of how to timely respond thereto and the potential consequences for failing to do so. ECF No. 13.

## II.    ANALYSIS

### A. Clark's petition is not barred by the statute of limitations.

The time limit for filing a federal petition for habeas corpus is governed by 28 U.S.C. § 2244(d), part of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides, in pertinent part, that a one-year statute of limitations begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This time period tolls when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

The Supreme Court of Virginia refused Clark's direct appeal on January 21, 2014. ECF No. 1 at 2. Clark had 90 days from entry of that final judgment to file a petition for a writ of certiorari to the United States Supreme Court. *See* Sup. Ct. R. 13(1). He did not do so, and his conviction became final on April 21, 2014. Under section 2244(d), he had one year from that date to file a federal petition, such time being tolled during review of a properly filed state habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Without tolling, Clark's federal statute of limitations would have expired on April 21, 2015. Respondent asserts that Clark's state petition was filed on June 25, 2015. ECF No. 12 at 2. A state petition filed on June 25, 2015 could not toll the federal limitations period, because the federal limitations period would have already expired. In his federal petition, however, Clark indicates that he actually filed his state petition on January 21, 2015. ECF No. 1 at 3. Clark indicates that he filed his state petition on January 21, 2015 in other documents as well, such as in a supplemental brief in support of his state petition and in his habeas appeal to the Virginia Supreme Court. *See* ECF No. 17 at 16; ECF No. 12-3 at 9.

Review of the trial court records does reflect that Clark's state petition was filed on June 25, 2015 as respondent claims. *Clark v. Clarke*, No. CL15-1364, at 5 (Va. Cir. Ct. 2015). However, Clark signed his state petition, as confirmed by a notary public, on January 21, 2015. *Id.* at 5. Neither party provides any explanation for the five-month delay between the signing of the petition and its filing.[5] The record also contains a letter from Clark addressed to the clerk of the Hampton Circuit Court, dated January 20, 2015, indicating that the following were enclosed: a motion for appointment of counsel, a motion for leave to proceed *in forma pauperis*, and a petition for habeas corpus. *Id.* at 64. This letter was filed in Hampton Circuit Court on January 25, 2015. *Id.* Under the jailhouse mailbox rule, a filing by an unrepresented prisoner is deemed submitted when it is delivered to prison officials for mailing. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991).

Additionally, the Code of Virginia provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01-654(A)(2). If Clark had filed his petition on June 25, 2015, it would have been untimely under Virginia law, because it would have been filed more than one year after the final disposition of Clark's direct appeal on January 21, 2014, and more than two years after the date of conviction or sentence in the trial court on December 18, 2012. Despite this, in ruling upon Clark's appeal of the denial of habeas relief on March 31, 2017, the Virginia Supreme Court did not bar Clark's petition as untimely under section 8.01-654(A)(2).

---

[5] It appears that the delay may have been related to Clark's requests for *in forma pauperis* status initially being denied. *Clark v. Clarke*, No. CL15-1364, at 73–76 (Va. Cir. Ct. 2015).

Accordingly, the Court will move forward under the assumption that the state petition was filed on January 21, 2015, as Clark contends. Between the end of his direct appeal on April 21, 2014, and the beginning of his state habeas proceeding on January 21, 2015, 275 days passed. The statute of limitations was tolled from January 21, 2015 until the Virginia Supreme Court refused his habeas appeal on March 31, 2017.[6] Between March 31, 2017, and Clark placing his petition in the prison mailing system on June 26, 2017, 87 days passed. Thus, 362 non-tolled days passed between the end of Clark's direct appeal and the filing of his federal habeas petition.

Accordingly, Clark's federal petition was filed within the time requirements of section 2244(d).

## B. Standards of Review

### 1. State Procedural Default Precludes Federal Review

In addition to ensuring that the statute of limitations has been complied with, the Court must also confirm that Clark exhausted his remedies in state court before the Court addresses the merits of the habeas petition, *see* 28 U.S.C. § 2254(b), and that the claims were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider allegations of constitutional violations before presentation of such claims to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436

---

[6] Clark is not entitled to another 90 days to petition for a writ of certiorari. *See Crawley v. Catoe*, 257 F.3d 395, 399 (4th Cir. 2001) (holding that neither the time for filing a petition for certiorari seeking review of a state habeas corpus petition, nor the time a petition for certiorari is being considered, tolls the statute of limitations under 28 U.S.C. § 2244(d)).

(E.D. Va. 1991). Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Under this doctrine, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). "A state procedural rule is adequate if it is regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)).

Simultaneous exhaustion and default "occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Such claims are simultaneously exhausted and procedurally defaulted, because any attempt to raise the claims before the Supreme Court of Virginia now would be barred as a successive petition under Virginia Code § 8.01-654(B)(2). *See also Dorsey v. Angelone*, 544 S.E.2d 350, 352 (Va. 2001). Under *Teague v. Lane*, 489 U.S. 288, 297–98 (1989), this Court cannot consider claims that would be procedurally defaulted in state court if raised now.

## 2.  Deference to State Court Decisions

When a claim has been properly exhausted and adjudicated on the merits in state court, this Court assesses the state court adjudication pursuant to 28 U.S.C. § 2254(d), rather than reviewing the merits of such a claim *de novo*.  Section 2254(d) provides that a federal court may not grant relief on any claim that was adjudicated on its merits in state court, unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law when a state court applies a rule different from the governing law articulated by the Supreme Court or arrives at a conclusion opposite that of the Supreme Court on materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citation omitted); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  A state court decision constitutes an "unreasonable application" of federal law when the court identifies the correct governing legal principle from the decisions of the Supreme Court, but unreasonably applies that principle to the facts of the case.  *Williams*, 529 U.S. at 413; *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that an unreasonable "application of clearly established law must be objectively unreasonable," rather than simply "incorrect or erroneous").  Stated differently, a "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

9

"For a state court's factual determination to be unreasonable under [section] 2254(d)(2), it must be more than merely incorrect or erroneous. It must be sufficiently against the weight of the evidence that it is objectively unreasonable." *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010) (citations omitted). Pursuant to this deferential standard of review, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389.

### 3. Ineffective Assistance of Counsel Claims

To review a claim of ineffective assistance of counsel, the Court must apply "a doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quotation omitted). The applicable standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687–700 (1984), requires a petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness, and (2) prejudiced petitioner as a result. To establish that counsel's performance fell below an objective standard of reasonableness, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In doing so, petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This requires petitioner to establish "probability

sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 694. A federal habeas court need not address both cause and prejudice if the defendant makes an insufficient showing on either one. *Id.* at 697. Because petitioner presents these claims in a petition for federal habeas review under section 2254, he must show that the state court's dismissal of his ineffective assistance of counsel claims was contrary to, or an unreasonable application of, the *Strickland* standard, or was predicated upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

## C. Clark's argument that his trial counsel was ineffective for failing to move for separate trials is procedurally defaulted.

Respondent concedes that Clark has exhausted his state remedies with respect to all of his claims except for the portion of ground two claiming that trial counsel failed to move for separate trials. ECF No. 12 at 7–8. Respondent argues that Clark has failed to exhaust his state remedies with respect to that portion of ground two because he did not present that argument to any state court in a procedurally sufficient way. *Id.*

The first time Clark raised the argument that trial counsel was ineffective for failing to move for separate trials was in a supplemental assignment of error added as part of his appeal of the circuit court's denial of his habeas petition to the Supreme Court of Virginia. ECF No. 17 at 8–14. The Virginia Supreme Court dismissed that supplemental assignment of error pursuant to Virginia Supreme Court Rule 5:17(c)(1)(iii), because the claimed error did not address the circuit court's ruling. ECF No. 17 at 15. "In general, 'a federal habeas court may not review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Burket v. Angelone*, 208 F.3d 172, 183 (4th Cir. 2000)). The Fourth Circuit has

11

consistently found Rule 5:17 of the Rules of the Supreme Court of Virginia to be an independent and adequate state bar to federal review, because it is firmly established, regularly followed, and independent from any federal constitutional ruling. *See Hedrick v. True*, 443 F.3d 342, 360 (4th Cir. 2006); *Mueller v. Angelone*, 181 F.3d 557, 584 (4th Cir. 1999); *Yeatts v. Angelone*, 166 F.3d 255, 264 (4th Cir. 1999).

Clark himself acknowledges that the circuit court did not consider this issue, because it was presented for the first time in his supplemental assignment of error. ECF No. 17 at 2. Nevertheless, he argues that good cause and the ends of justice should have allowed this assignment of error to move forward, pursuant to Virginia Supreme Court Rule 5:25.[7] *Id.* at 1–2.

The Supreme Court has recognized that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). *Martinez* has been organized into a four-part test: (1) the ineffective assistance of counsel claim must be substantial, that is, it must have "some merit," *Hill v. Clarke*, No. 1:15cv810, 2016 WL 754500, at *4 (E.D. Va. Feb. 22, 2016); (2) the petitioner must be unrepresented or have only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the first proceeding with respect to the claim; and (4) state law requires that ineffective assistance of counsel be first argued in an initial-review collateral proceeding. *Fowler v. Joyner*,

---

[7] Rule 5:25 provides that:

> [n]o ruling of the trial court . . . before which the case was initially heard will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

Va. S. Ct. Rule 5:25.

753 F.3d 446, 461 (4th Cir. 2014) (citing *Trevino v. Thaler*, 569 U.S. 413, 422–23 (2013); *Martinez*, 566 U.S. at 14).

In this case, Clark was unrepresented before the state habeas court, satisfying prong two. Clark first raised this claim for ineffective assistance of counsel during the state collateral review proceeding to the Supreme Court of Virginia, satisfying prong three. Next, Virginia law requires a petitioner to raise all claims of ineffective assistance of counsel on collateral review, satisfying prong four. *See Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001).

However, Clark fails to demonstrate that his claim has merit, and therefore fails to establish that his procedural default is excused under the *Martinez* test. Clark contends that his trial counsel was ineffective for not seeking a severance under Rule 3A:6(b), which states:

> Joinder of Offenses.  Two or more offenses, any of which may be a felony or misdemeanor, may be charged in separate counts of an indictment or information if the offenses are based on the same act or transaction, or on two or more acts or transactions that are connected or constitute parts of a common scheme or plan.

Va. S. Ct. Rule 3A:6(b).

In this case, the defendant was convicted of having taken his niece's car without authorization and using it to commit several crimes of theft within three days of each other, all with the apparent motive of obtaining money with which the defendant could purchase cocaine. It was not professionally unreasonable for Clark's attorney to conclude a severance motion would be futile and that Clark's alleged acts were connected such that the offenses could be joined.  Clark has thus not demonstrated the first prong of *Strickland*, that his attorney's performance "fell below an objective standard of reasonableness."

Nor has Clark demonstrated the second prong, showing that his attorney's failure to seek a severance prejudiced him.  Clark was tried by a judge, rather than by a jury.  Judges, by virtue of their legal training, are more readily able to compartmentalize relevant evidence and irrelevant

evidence, and are less likely to convict a criminal defendant of one crime simply because evidence of another crime has been offered. *See Flannery v. City of Norfolk*, 218 S.E.2d 730, 735 (Va. 1975) ("judges are suited by training and experience to disregard potentially prejudicial comments"); *Akers v. Commonwealth*, 216 S.E.2d 28, 31 (Va. 1975) ("a Judge—unlike a jury—by reasons of his learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and making an objective determination") (internal citation omitted). Clark has failed to show a reasonable probability (1) that any motion by his attorney to sever the trials would have been successful; and (2) that, had the trials been severed, the outcome on any charge would have been different.   Absent this showing, Clark has not demonstrated a meritorious ineffective assistance of counsel claim, such that *Martinez* offers him safe haven from procedural default.   Therefore, Clark's argument that counsel was ineffective for not moving to sever Clark's charges is procedurally defaulted, and this portion of ground two should be dismissed with prejudice.

**D.  Clark's remaining claims fail on the merits.**

   1.  **Ground One:   The state court did not act unreasonably in finding the evidence at trial sufficient to support a finding of guilt.**

   In ground one, Clark argues that the evidence presented at trial was insufficient to support a finding that he was guilty beyond a reasonable doubt, thus denying him due process of law under the United States Constitution. ECF No. 1 at 21–26.   Specifically, Clark argues that the Commonwealth failed to prove beyond a reasonable doubt that he committed the breaking and entering of Eric Wilson's residence or the robbery of Annie Starnes.  *Id.*   The Court examines the last reasoned decision addressing ground one.  *Grueninger v. Dir., Va. Dep't of Corrections*, 813 F.3d 517, 525 (4th Cir. 2016) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (federal habeas courts should presume that "[w]here there has been one reasoned state

judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground")). In this case, the Virginia Court of Appeals was the last court to provide reasons addressing the sufficiency of the evidence. ECF No. 12-1.

With respect to the breaking and entering, Clark argues that there was no evidence that he ever entered Mr. Wilson's residence and there was no evidence that he actually handled the stolen property that was found in the trunk of the car. *Id.* at 22–24. At trial, Eric Wilson testified about the belongings that were taken from his home, including, among other items, a green Nike duffle bag and a computer keyboard, mouse, and monitor. ECF No. 12-4 at 51–53. He testified next that he went to the police station after being informed that his items were recovered, and positively identified some of the items that were taken from his residence, including a green Nike duffle bag, a knife, a memory card for a digital camera, two credit cards that he kept in a safe, his voter registration card, a silver pocket watch, and a computer keyboard and monitor. *Id.* at 54– 55.

Detective Baer testified next about some items that were recovered from the trunk of the black Neon where Clark was a passenger, including a green Nike duffle bag, a computer keyboard, mouse, and monitor, and a pocket watch with the initials "ETW." ECF No. 12-4 at 64; ECF No. 12-5 at 1–3. Detective Baer further testified that he recovered a Mossberg shotgun wrapped in a pair of black sweat pants near the stolen goods, ECF No. 12-5 at 1–2, and that Clark had stated that he had wrapped the shotgun and placed it in the trunk, with the hopes of later selling it for money to buy crack-cocaine.[8]  *Id.* at 4.

---

[8] Clark argues that he never admitted to handling the firearm and that Detective Baer lied at trial. ECF No. 17 at 3. A federal habeas court is not well-situated to second-guess a state trial court's credibility determination about a testifying witness in the absence of compelling grounds for rejecting such testimony.

The court of appeals held that the discovery of Mr. Wilson's belongings in the trunk of the car, combined with Clark's admission that he handled and placed the shotgun in the trunk, was sufficient evidence to show at least joint possession of recently stolen goods, permitting an inference that Clark committed breaking and entering and grand larceny.  ECF No. 12-1 at 4 (quoting *Graham v. Commonwealth*, 459 S.E.2d 97, 100 (Va. 1995) ("Once the crime [of larceny] is established, the unexplained possession of recently stolen goods permits an inference of larceny by the possessor.").  Under Virginia law, "proof of breaking and entering and theft of goods justifies an inference that both offenses were committed at the same time by the same person as a part of the same enterprise if there is further proof that the goods stolen were found soon thereafter in the possession of the accused." *Cook v. Commonwealth*, 204 S.E.2d 252, 253 (Va. 1974); *see also Delain v. Commonwealth*, No. 1961-11-1, 2012 WL 5199222, at *2–3 (Va. Ct. App. Oct. 23, 2012) (finding that, where the defendant was found in possession of stolen checks shortly after a burglary, there was a reasonable inference that the defendant committed the burglary).  Further, "the fact-finder may infer the stealing of the whole from the possession of the part." *Henderson v. Commonwealth*, 213 S.E.2d 782, 813 (Va. 1975) (internal citations omitted).

Clark's argument is most appropriately considered a challenge under section 2254(d)(2). Clark effectively argues that the state court's ruling was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(2).  The Court disagrees.  Under the deferential standard of section 2254, an unreasonable factual determination must be more than merely incorrect, but must be objectively unreasonable.  The evidence at trial demonstrated:  (1) some of Eric Wilson's belongings were stolen from his residence; (2) some of those same belongings were found in the trunk of a car in

Clark's possession; (3) located adjacent to Mr. Wilson's items in the trunk investigators recovered a shotgun that Clark admitted he had placed there; (4) Clark also admitted to police he was driving and searching for money (and/or goods which he planned to sell) with which to buy drugs; and (5) during a traffic stop on December 8, 2011, the day after Eric Wilson's house was broken into, Clark fled from the very vehicle containing some of the items stolen from Mr. Wilson's house.  Given these facts, the state court was not objectively unreasonable in finding that the evidence supported convictions for breaking and entering and grand larceny.

With respect to the robbery of Annie Starnes, Clark argues that Ms. Starnes did not identify Clark as the perpetrator, that the Commonwealth failed to show that any violence or intimidation was used in connection with the taking of the purse, and that the Commonwealth admitted photographs at trial of a purse and injuries that were not connected to Ms. Starnes or the incident. ECF No. 1 at 24–26.

According to testimony by Detective Baer, when asked about the robbery, Clark told Detective Baer that, "if you think I did it, then I did it," and stated that he was so high on cocaine that all he remembered was "driving around looking for any type of money to get high with." ECF No. 12-4 at 70.  Detective Baer also testified that he reviewed the security footage from the incident, which shows a black male exit the passenger side of Clark's niece's black Neon, approach Ms. Starnes, and then re-enter the vehicle. ECF No. 12-5 at 5–6.  Ms. Starnes testified that a black car pulled close to her, a black male jumped out and grabbed her purse, knocking her down and causing her to scrape her knee, elbow, and hand, and then jumped back into the passenger seat before the car drove away. ECF No. 12-4 at 35.  The court of appeals held that Ms. Starnes' testimony, combined with security footage of the parking lot where the robbery

took place, was sufficient to support the conviction for violating section 18.2-58 of the Code of Virginia. ECF No. 12-1 at 5–6.

At trial, the Commonwealth admitted photographs, marked as Commonwealth's exhibits two and three, which showed, among other things, a purse and a white female's leg. ECF No. 12-4 at 36–39. The Commonwealth showed these photographs to Annie Starnes on her direct examination. *Id.* Upon being shown the photographs, Ms. Starnes testified "[t]hat's not my purse. That's not my leg." ECF No. 12-4 at 37. Clark argues that the court "was persuaded to find guilt based upon unlawfully presented and highly prejudicial evidence of other (non-proven) crimes to unfairly infer that even with a complete lack of credible evidence, I must be guilty." ECF No. 1 at 26. According to Clark, the pictures were of injuries suffered by a victim in an unrelated case in Newport News, ECF No. 1 at 25–26. The court of appeals did not address the photographs.

Again, the state court's determination that Clark committed the robbery of Ms. Starnes was not objectively unreasonable under section 2254(d)(2). The evidence supporting such a conclusion includes:  (1) Clark had access to his niece's vehicle and its keys; (2) Clark admitted to "borrowing" his niece's vehicle and driving it around looking for money to buy cocaine; (3) Ms. Starnes testified that a black male exited the vehicle and forcibly took her purse, knocking her down; (4) security footage showing the same, and showing that the perpetrator exited the same car Clark "borrowed" from his niece; (5) the similarity between the robberies of Ms. McNeil and Ms. Starnes, which were committed the same day; and (6) Clark's flight prior to arrest. The court of appeals did not base its decision on the photographs to which Clark objects, or otherwise discuss such photographs, and there is no evidence that the trial judge in Clark's bench trial based his decision on the photographs. Further, the fact that the perpetrator grabbed

Ms. Starnes' purse from her person with such force that she fell to the ground and was injured is evidence that violence was used in connection with the taking of the purse. Given the evidence presented at trial, it was not objectively unreasonable under section 2254(d) for the court of appeals to find the evidence sufficient to convict Clark of robbery in violation of Virginia Code section 18.2-58.

Accordingly, Clark's first ground should be dismissed with prejudice.

### 2. Ground Two:  Clark's claim that his counsel was ineffective in his investigation and communication should be dismissed.

In ground two, Clark argues that his trial attorney failed to communicate with him effectively. ECF No. 1 at 26. Clark further argues that his attorney failed to perform an adequate investigation. *Id.* at 26–28. Clark's attorney's alleged failure has three primary components:  (1) he failed to interview or subpoena a witness, Kanisha Smith; (2) he neglected to subject the stolen property to scientific analysis; and (3) his lack of investigation allowed the prosecutor to introduce testimony about the unconnected photographs discussed in the prior section. *Id.*[9]

Clark argues that his attorney did not adequately communicate with him and did not respond to his telephone calls or letters. ECF No. 1 at 26–27. The state habeas court found that Clark represented at trial that "he understood the charges against him, that he was ready for trial, and that he was satisfied with the services of [his attorney]," and that he was bound by these representations made to the trial judge. ECF No. 12-2 at 5; *see also* ECF No. 12-4 at 24–25.

---

[9] Clark additionally argues that his attorney provided ineffective assistance by failing to move for separate trials. ECF No. 1 at 28–31. As already discussed, Clark's argument that his attorney was ineffective for failing to move for separate trials is procedurally defaulted.

The Supreme Court of Virginia has stated:

> Borrowing from the rule adopted by the United States Court of Appeals for the
> Fourth Circuit denying evidentiary hearings on . . . habeas petitions, we hold that
> the truth and accuracy of representations made by an accused as to the adequacy
> of his court-appointed counsel . . . will be considered conclusively established by
> the trial proceedings, unless the prisoner offers a valid reason why he should be
> permitted to controvert his prior statements.

*Anderson v. Warden of Powhatan Correctional Ctr.*, 281 S.E.2d 885, 888 (Va. 1981) (citing

*Edmonds v. Lewis*, 546 F.2d 566, 568 (4th Cir. 1976)); *see also Jones v. Taylor*, 547 F.2d 808,

810 (4th Cir. 1977). Clark has not provided the Court with any evidence that Clark's attorney

has not adequately communicated with him.[10] Clark has not provided any reason he should be

permitted to contradict his prior assertions. Clark has thus not demonstrated under *Strickland*

either that his counsel's performance fell below an objective standard of reasonableness in his

communication, or that counsel prejudiced Clark with a lack of communication. Clark has

simply not presented any evidence demonstrating constitutionally-insufficient communication.

Next, Clark argues that his attorney was ineffective for failing to interview or subpoena a

witness, Kanisha Smith. ECF No. 1 at 27. According to Clark, Kanisha Smith was driving the

vehicle at the time of Clark's arrest on December 8, 2011, and "was willing to testify that [Clark]

did not commit the robbery of Annie Starnes on December 5, 2011 or the breaking and entering

and grand larceny of Eric Wilson's home on December 7, 2011." *Id.* Clark further asserts that

Ms. Smith would have testified that when she and Clark picked up a third person, Taquan

Spencer, "he had a green Nike bag and white pillow case that he placed in the trunk of the car."

---

[10] In his state petition, Clark attached a letter from him to his trial counsel, after the date of
sentencing, regarding his appeal and lamenting his counsel's poor communication and the fact
that counsel had only visited Clark at jail twice since Clark was first incarcerated. *Clark v.
Clarke*, No. CL15-1364, at 47–48 (Va. Cir. Ct. 2015). This letter may demonstrate Clark's state
of mind with respect to his representation, but it does not establish that his attorney provided
constitutionally-defective assistance.

20

*Id.* The state habeas court found that "Clark represented at the commencement of his trial that all of his witnesses were present" and that Clark was bound by that representation. ECF No. 12-2 at 4 (citing *Anderson*, 281 S.E.2d at 888); *see also* ECF No. 12-4 at 24–25.

Clark has not presented the Court with an affidavit by Ms. Smith detailing what her hypothetical testimony would have been. *See Hill v. Clarke*, No. 1:15cv810, 2016 WL 754500, at *5 (E.D. Va. Feb. 22, 2016) ("Both Virginia and federal courts recognize the principle that failure to provide an affidavit to verify the testimony of a missing witness is fatal to a habeas petitioner's claim of ineffective assistance."). Clark has not satisfied the prejudice prong from *Strickland*. First, Clark has not proffered in any significant detail what Ms. Smith would have testified to regarding Clark's whereabouts during the robbery of Ms. Starnes. This failure is significant in light of the facts discussed above, including the similarities in the robberies of Ms. McNeil and Ms. Starnes on December 5, 2011. Moreover, for example, if Clark was in the car when the car was used in connection with the robbery of Ms. Starnes, he could still be an accessory to robbery. Second, Ms. Smith's hypothetical testimony about Mr. Spencer would not necessarily relieve Clark of culpability. *See Moehring v. Commonwealth*, 290 S.E.2d 891, 892 (Va. 1982) ("[A]nyone who knows that personal property is stolen and assists in its transportation or disposition is guilty of larceny."). Finally, Clark has not presented evidence that such testimony would have been credible, in light of the other evidence supporting the conviction. In short, Clark has failed to satisfy his burden of showing prejudice under *Strickland*.

Clark also argues that his attorney "neglected to subject the stolen property to scientific analysis." ECF No. 1 at 30. The Court first notes that this argument does not appear to have been raised before the state habeas court, and thus may be procedurally defaulted. In any case,

Clark again fails the prejudice prong from *Strickland*, because he fails to posit what exculpatory information any scientific analysis would have revealed.

Finally, Clark argues that his attorney's lack of investigation allowed the prosecutor to enter exhibits into evidence during Ms. Starnes' testimony that were not connected with Clark's case, specifically the photographs of a purse and of an injured leg allegedly connected with a separate crime committed in Newport News. ECF No. 1 at 28–29. The state habeas court noted that the photographs were intended only as cumulative evidence of Starnes' injuries, which were not an element of the offense. ECF No. 12-2 at 3–4. The state habeas court also noted that Starnes' testimony was clear that the photographs were not connected with her, and that she was knocked down and suffered scrapes on her knee, elbow, and hand. *Id.*

This Court agrees with the state habeas court that Clark has not shown prejudice under *Strickland* due to counsel's failure to object to the previously referenced photographs. The Court additionally notes that Clark's case was tried before a judge, rather than a jury. A judge is more readily able in the course of a trial to separate unnecessary or irrelevant evidence from that evidence appropriately considered. Further, even if such evidence were improper, its admission does not necessarily establish prejudice where, as here, the properly admitted evidence is sufficient to support a conviction. *See Jones v. Clarke*, 783 F.3d 987, 992–93 (4th Cir. 2015) (holding that a habeas petitioner failed to demonstrate prejudice, even where the trial judge specifically relied on improper fingerprint evidence, because the other evidence of guilt was sufficient to support a conviction). Thus, Clark has not demonstrated prejudice.

For these reasons, Clark's second ground that counsel was ineffective due to a failure to communicate and properly investigate his claims should be dismissed with prejudice.

3. **Ground Three:  Clark was not prejudiced by the late formal notice because he had adequate notice of the charges upon which he was tried.**

In ground three, Clark argues that his trial counsel was ineffective for failing to advise Clark, prior to the day of trial, that he had been re-indicted on four felony offenses, and for failing to object to the lack of notice or request a continuance. ECF No. 12 at 32–37. As with previous grounds, the Court notes that Clark represented to the trial court that he understood the charges against him, was ready to go forward with trial, and was satisfied with his attorney. ECF No. 12-4 at 24–25.

Indeed, the record reveals that Clark was aware of the indictments against him. On the morning of trial on October 10, 2012, the trial judge read the charges to Clark and took Clark's pleas of not guilty to each charge. ECF No. 12-4 at 20–23. Clark stated that he understood the charges against him, had discussed the charges with his attorney, and had discussed any possible defenses he might have had. *Id.* at 24. When asked if he was ready to go to trial that day, Clark responded "[y]es, sir." *Id.* at 25. When next prompted and asked if he had questions for the court, Clark indicated that his gun charges were *nolle prosequi* and that his charge as it related to Ms. McNeil was not originally a robbery charge. *Id.* at 26–27. Clark then stated that he found out he was to be re-indicted by the Commonwealth, with the new indictments coming on June 4, 2012, more than four months before his trial.[11] *Id.* at 26–27. He indicated, however, that he had

---

[11] The indictment with respect to Ms. McNeil, dated June 4, 2012, charges that Clark "unlawfully and feloniously did rob Mary McNeil in violation of § 18.2-58 of the Code of Virginia." ECF No. 17 at 31. This charge differs from the initial warrant of arrest on December 8, 2011, which charged that Clark "unlawfully and feloniously in violation of Section 18.2-95 [of the] Code of Virginia st[ole a] purse valued at $5 or more from the person of Mary McNeil." ECF No. 17 at 30. Nonetheless, the language of the indictment controls over the language of the arrest warrant, and the evidence shows that Clark knew the correct indictment date of June 4, which indicates that he knew of the indictment, as his lawyer represented to the trial court. ECF No. 12-4 at 26–27. Further, there is no indication that his attorney was unprepared to defend against a charge of robbery.

23

not received the indictments prior to the date of trial. *Id.* His attorney stated that he had personally shown Clark the indictments, but that Clark had not been formally served with the indictments. *Id.* The trial court then declared "[w]ell, we'll just give him notice today." *Id.* The state habeas court also found that "Clark was personally aware of the nature of the charges," that "Clark's counsel was fully aware of the charges and was prepared to go forward with the defense," and that "Clark's counsel was fully aware of the indictments and had told Clark about the indictments." ECF No. 12-2 at 5–6.

Notwithstanding that the charging documents were served on Clark on the morning of trial, Clark has not demonstrated any prejudice under the *Strickland* standard. The record indicates that he and his attorney were aware of the charges at issue, that his attorney was prepared to defend against them, and that Clark affirmatively stated to the court that he was ready to proceed with trial on that day, as the state habeas court found. Accordingly, ground three should be dismissed with prejudice.

### 4. Ground Four:  Clark's claim of ineffective assistance of counsel as to his appellate representation should fail.

In ground four, Clark argues that his appellate counsel provided ineffective assistance by supplying incorrect legal advice and failing to perfect Clark's petition in a procedurally acceptable manner. ECF No. 1 at 37–43. Specifically, Clark argues appellate counsel was ineffective for not appealing on the grounds that Clark lacked notice of new indictments until the day of trial, and that Clark should have been tried separately for the separate offenses. *Id.* Clark further argues that his appellate counsel did not adequately perfect his appeal with respect to the

24

sufficiency of the evidence, causing the court of appeals to not address those arguments pursuant to Virginia Supreme Court Rule 5A:12(c).[12]  *Id.* at 43.

With respect to the notice issue, when Clark inquired of his appellate counsel about appealing based on that ground, counsel informed him that he was "barred under the Rules of the Virginia Court of Appeals from trying to raise that issue for the first time on appeal." ECF No. 1 at 61.   Clark argues that this was an incorrect statement of law, because Rule 5:25, which provides that "[n]o ruling of the trial court . . . before which the case was initially heard will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling," can be relaxed "for good cause shown or to enable th[e] Court to attain the ends of justice."  Va. S. Ct. Rule 5:25.  The state habeas court found that Clark had adequate notice of the charges against him and that it was for appellate counsel's best judgment about which arguments to pursue on appeal.  ECF No. 12-2 at 8–9.

Justice Jackson has observed that the receptiveness of an appellate judge to a suggestion that a trial court has committed error "declines as the number of assigned errors increases," because "[m]ultiplicity hints at lack of confidence in any one."  Jackson, *Advocacy Before the Supreme Court*, 25 Temple L.Q. 115, 119 (1951).  For this reason, the Supreme Court has clearly stated that an appellate advocate need not raise every nonfrivolous argument the client requests. *Jones v. Barnes*, 463 U.S. 745, 750–54 (1983); *see also Townes v. Commonwealth*, 362 S.E.2d 650, 657 (Va. 1987) (stating that, once appellate counsel was appointed, "she controlled the case, and it was for her to decide what questions should be raised").

---

[12] Rule 5A:12(c) details the method for listing assignments of error for the court of appeals to consider, and states that "[o]nly assignments of error assigned in the petition for appeal will be noticed by this Court."  Va. S. Ct. Rule 5A:12(c).

This does not mean that appellate counsel is impervious to an ineffective assistance claim when deciding which issues to assert on appeal. If appellate counsel elects not to bring a claim due to a gross misreading of the law, for example, and prejudice results, then an ineffective assistance claim may be appropriate. Such a finding is not supported on this record, however.

The good cause and ends of justice exceptions are only appropriate "when the record reflects 'error' which is 'clear, substantial and material.'" *Johnson v. Commonwealth*, No. 0259-91-1, 1992 WL 441876, at *2 (Va. Ct. App. Nov. 10, 1992) (quoting *Brown v. Commonwealth*, 380 S.E.2d 8, 11 (Va. 1989)). Clark's petition insinuates that his appellate counsel was unaware of the exceptions in Rule 5:25, but counsel's alleged statement that "I'm barred under the rule of the Virginia Court of Appeals from trying to raise that issue for the first time on appeal" does not necessarily support that conclusion. *See* ECF No. 1 at 41. Clark's appellate counsel may simply have believed that there was no error which was "clear, substantial, and material," and that it was better to focus on different arguments, such as Clark's insufficiency of the evidence argument. Clark's appellate attorney could have decided not to appeal the issue and still fall "within the wide range of reasonable professional assistance." *See Burch*, 273 F.3d at 588 (quoting *Strickland*, 466 U.S. at 689). Clark has therefore not satisfied the deficient-performance prong of *Strickland*. Even if appellate counsel's performance was fundamentally deficient, Clark has not shown prejudice. Even had counsel raised the argument regarding the notice, as the Court has previously discussed, such an argument is unlikely to have changed the outcome of Clark's case, given the evidence that Clark was aware of the charges against him and that his counsel was prepared to defend against the charges.

With respect to Clark's remaining arguments, the Court first notes that these arguments do not appear in the state habeas petition. Clark's state habeas petition alleges, in state ground

16, that counsel failed to inform the petitioner that he could raise the issue regarding the lack of notice of the indictments under the good cause and ends of justice exceptions to Rule 5:25. *Clark v. Clarke*, No. CL15-1364, at 38–41 (Va. Cir. Ct. 2015). This argument differs from an argument that appellate counsel did not appeal the failure to sever Clark's charges,[13] or that appellate counsel failed to adequately perfect Clark's appeal. Accordingly, and notwithstanding respondent's concession that Clark exhausted his state remedies with respect to ground four, such arguments may be procedurally defaulted. Nevertheless, because *Martinez* contemplates consideration of whether an ineffective assistance of counsel claim is "substantial," the Court will address the merits.

Clark's claim that appellate counsel was ineffective for failing to appeal the severance issue lacks merit for similar reasons as his claim that trial counsel was ineffective for failing to object to the lack of severance. As discussed in that section above, any violation of Rule 3A:6(b) is not as clear as Clark asserts. The case against Clark's appellate attorney is even weaker than his claim against his trial attorney, because Rule 5:25 could have presented an additional barrier for Clark's appellate attorney to cross before such an argument would be heard by the appellate court. Again, Clark's appellate counsel could have made the professional decision that there were stronger arguments worth pursuing on appeal, and Clark has satisfied neither prong of the *Strickland* standard.

Finally, Clark argues that his appellate counsel was deficient in perfecting his appeal regarding the sufficiency of the evidence. ECF No. 1 at 43. The court of appeals addressed Clark's arguments regarding the sufficiency of the evidence, with the exception of his argument

---

[13] As previously discussed under the procedural default section, Clark did not argue that he should have been tried in separate trials until his supplemental assignment of error before the Supreme Court of Virginia after the state habeas court had already considered his petition.

27

that the Commonwealth failed to elicit evidence demonstrating the takings of Ms. McNeil's and Ms. Starnes' purses was accomplished by force, threat, or intimidation. ECF No. 12-1 at 7. The court of appeals declined to address this argument pursuant to Rule 5A:12(c), because the argument was not one of the assignments of error listed in the petition. *Id.* While appellate counsel arguably erred in not listing this argument as an assignment of error, Clark has not proven prejudice under *Strickland*. Ms. Starnes testified at trial that the robber knocked her down, causing her to suffer scrapes on her knee, hand, and elbow. ECF No. 12-4 at 36. Ms. McNeil testified that the robber, whom she identified as Clark, followed her from Family Dollar, asked her for her purse, and then snatched it from her shoulder. *Id.* at 41–42. She testified that she tried to hold her purse back, but he was stronger. *Id.* at 42–43. She testified that she "thought he was going to strike [her] or something." *Id.* at 47. Such evidence is illustrative of force, threat, or intimidation, such that Clark has not demonstrated a reasonable probability that the court of appeals would have overturned the trial court's determination had it considered his appeal.

Because Clark has not shown that his appellate counsel provided ineffective assistance, ground four of the petition should be dismissed with prejudice.

## III.   RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 10, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 13, 2018

29